# United States District Court

**CENTRAL** DISTRICT OF **CALIFORNIA**

**In the Matter of the Seizure of**
(Address or Brief description of property or premises to be seized)

Up to $272,805.00 on deposit in Pasadena Federal Credit Union checking account number 119130.

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

**CASE NUMBER:** 2:21-MJ-4972

**I, Daniel Hochman, being duly sworn depose and say:**

**I am a Special Agent with the United States Secret Service, and have reason to believe that**

**in the CENTRAL District of CALIFORNIA there is now concealed a certain person or property, namely** (describe the person or property to be seized)

Up to $272,805.00 on deposit in Pasadena Federal Credit Union checking account number 119130.

**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b)(2), 982(b), and 21 U.S.C. § 853(e) and (f).

**concerning a violation of Title 18 United States Code, Section(s)** 1343, 1344, 1956(c)(7)(A), 1961(1)(B), and 1957.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

**Continued on the attached sheet and made a part hereof.    X Yes __ No**

**Attested to by the applicant in accordance with the Requirements of Fed. R. Crim. P. 4.1 by telephone**

**Sworn before me in accordance with requirements of Fed. R. Crim. P. 4.1 by telephone**

**Date**

**Los Angeles, California**
**City and State**

**Hon. Michael R. Wilner, U.S. Magistrate Judge**
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

AUSA Dan G. Boyle;tk

**AFFIDAVIT**

I, Daniel Hochman, being duly sworn, hereby depose and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is presented in support of an application for a warrant to seize:

    a. Up to $272,805.00 (the "SUBJECT FUNDS") on deposit in Pasadena Federal Credit Union ("PFCU") in account number 119130 ("SUBJECT ACCOUNT"), held in the name of M.R. and S.R. with an address in Sunland, California.

2. Based on the facts set forth below, there is probable cause to believe that the SUBJECT FUNDS represent proceeds of violations of 18 U.S.C. §§ 1343 (wire fraud) and 1344 (bank fraud), which constitute "specified unlawful activity" pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B) and were involved in one or more violations of 18 U.S.C. §§ 1956 and 1957 (relating to money laundering). Therefore, the SUBJECT FUNDS are subject to seizure under 18 U.S.C. § 981(b)(2) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), as outlined below.

3. In addition, there is probable cause to believe that the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on

the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.  To the extent that the SUBJECT FUNDS are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that the funds are identical property found in the same accounts as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to Title 18, United States Code, Section 984 (Forfeiture of Fungible Property).

## II. BACKGROUND OF UNITED STATES SECRET SERVICE SPECIAL AGENT DANIEL HOCHMAN

4.  I am a Special Agent with the Department of Homeland Security, United States Secret Service ("USSS"), assigned to the Los Angeles Field Office, Cyber Fraud Task Force.  I have been employed by the USSS since 2013, five and a half years as a Police Officer within the USSS Uniformed Division, and the last two and a half years as a Special Agent.  In the capacity of a Special Agent I am responsible for investigating violations of federal criminal law, particularly those laws found in Title 18 of the United States Code and relating to financial institution fraud, including wire fraud, computer fraud, and money laundering.

5. I have received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia and the USSS James J. Rowley Training Center in Beltsville, Maryland. My training includes, but is not limited to, various investigative techniques and tactics regarding financial crimes, computer fraud and wire fraud. I have received continued education related to the investigation and prosecution of high-tech crimes and current techniques used by criminals to perpetrate their crimes.

6. Prior to my career with the USSS, I was employed for nine months as a Police Officer with the Placentia Police Department in Placentia, California. I received a Bachelor of Science degree in Criminal Justice from California State University, Long Beach.

7. The facts set forth in this affidavit are based upon my personal observations, my training and experience, my review of bank and other financial records, information obtained from other law enforcement agents and officers, and information obtained from witnesses. This affidavit does not purport to set forth my complete knowledge or understanding of the facts related to this investigation and is intended merely to show that there is sufficient probable cause for the requested warrant. I have set forth only the facts that I believe are

necessary to establish probable cause to seize the SUBJECT FUNDS.

### III. PANDEMIC UNEMPLOYMENT ASSISTANCE UNDER THE CARES ACT

8.  On March 13, 2020, the President of the United States declared COVID-19 as an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was passed by Congress and signed into law by President Trump on March 27, 2020.  The Act provides over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

9.  The Federal CARES Act expanded unemployment benefits to people affected by COVID-19.  Pandemic Unemployment Assistance ("PUA") program provides up to 39 weeks of benefits and is available starting with weeks of unemployment beginning on or after January 27, 2020 and ending on or before December 31, 2020. The program covers individuals who are self-employed, seeking part-time employment, or whom otherwise would not qualify for regular unemployment compensation or extended benefits under state or federal law or other pandemic related compensation.  The amount of compensation is calculated by individual states.

10.  In addition to the individuals referenced above, individuals without sufficient work history may be eligible for

PUA benefits. This generally applies to individuals without sufficient wages reported as an employee during the last 18 months for a regular UI claim. This could be the case if one is self-employed or an independent contractor, or an employee with insufficient earnings. To qualify for PUA based on insufficient work history, an applicant must have been recently employed, which could be satisfied if they had an offer to start working on a specific date but were unable to start due to a COVID-19-related reason. COVID-19 related reasons for being out of work include the following:

      a.   The applicant has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis.

      b.   The applicant is unable to work because a health care provider advised the applicant to self-quarantine due to concerns related to COVID-19.

      c.   A member of the applicant's household has been diagnosed with COVID-19.

      d.   The applicant is providing care for a family member or a member of their household who has been diagnosed with COVID-19.

      e.   A child or other person in the household for whom the applicant has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct

result of the COVID-19 and the school or facility care is required for the applicant to work.

      f.    The applicant became the major support for a household because the head of the household has died as a direct result of COVID-19.

      g.    The applicant had to quit their job as a direct result of COVID-19.

      h.    The applicant's place of employment closed as a direct result of COVID-19.

      i.    The applicant was scheduled to start a job that is now unavailable as a direct result of the COVID-19 public health emergency.

      j.    The applicant is unable to reach the place of employment as a direct result of the COVID-19 public health emergency.

      k.    If an applicant works as an independent contractor with reportable income they may also qualify for PUA benefits if they are unemployed, partially employed, or unable or unavailable to work because the COVID-19 public health emergency has severely limited their ability to continue performing their customary work activities and has thereby forced the applicant to stop working.

### IV. BACKGROUND ON SMALL BUSINESS ADMINISTRATION LOAN FRAUD

11. An additional provision in the CARES Act was the dedication of $350 billion towards small business relief in an effort to prevent layoffs and reduce closures. The Economic Injury Disaster Loan ("EIDL"), through the Small Business Administration ("SBA"), was designed to provide economic relief to businesses that are experiencing a temporary loss of revenue. The program allowed for small business owners and non-profit organizations in all states, Washington, D.C. and territories to apply for a loan.

12. To facilitate submitting EIDL applications and the processing of loans, a small business owner could apply online by visiting the SBA online homepage. The application process included steps inquiring as to the business, business owner, and supporting documents such as bank account information. The submission process further included a disclosure informing the applicant that the self-certification of the application is done so under penalty of perjury pursuant to 28 U.S.C. § 1746.

### V. STATEMENT OF PROBABLE CAUSE

13. Based on my review of bank and other financial records, information obtained from witnesses, as well as my own observations and knowledge of the investigation, I am aware of the following:

### PFCU Reports Fraudulent Deposits

14. In or about February 2021, PFCU contacted the USSS to report suspicious ACH deposits into a customer's account (the SUBJECT ACCOUNT) related to state unemployment benefits and SBA loans. PFCU reported the following:

    a. M.R. and S.R. are the identified accountholders for the SUBJECT ACCOUNT;

    b. Multiple deposits into the SUBJECT ACCOUNT had identifiers or deposit names that did not match either M.R. or S.R.;

    c. Multiple deposits into the SUBJECT ACCOUNT were coming from states in which neither M.R. nor S.R. resided, based on PFCU's records; and

    d. Multiple deposits of apparent SBA loan proceeds into the SUBJECT ACCOUNT were in the name of companies that did not appear to be associated with either M.R. or S.R.

### Review of SBA EIDL Loan Applications

15. On September 7, 2021, I reviewed SBA application number 21765600 ("Application 1"), provided by the SBA Office of the Inspector General. Application 1 was for a loan in the name of borrower Stepkings Farms, 202 E. South St., Mount Sterling, IL, 62353, for the amount of $44,700.00. Application 1 listed the principal borrower as S.K., with an address of 202 E. South St., Mount Sterling, IL, 62353. Application 1 identified S.K as

the Owner of Stepkings Farms, and provided a date of birth, tax ID number for S.K. and the number of current employees as four. Application 1 did not identify any connection to either S.R. or M.R.

16. On September 7, 2021, I reviewed SBA application number 21846239 ("Application 2"), provided by the SBA Office of the Inspector General. Application 2 was for a loan in the name of borrower Robfin Farms, 107 Grove St., Oxford NC, 27565, for the amount of $60,500.00. Application 2 listed the principal borrower as R.F., with an address of 107 Grove St., Oxford NC, 27565. Application 2 identified R.F. as the Owner of Robfin Farms, and provided a date of birth, tax ID number for R.F and the number of current employees listed as five. Application 2 did not identify any connection to either S.R. or M.R.

17. On September 7, 2021, I reviewed SBA application number 21295592 ("Application 3"), provided by the SBA Office of the Inspector General. Application 3 was for a loan in the name of borrower W Schoonover Farm, 29107 120th Way SE, Auburn, WA 98092, for the amount of $20,000.00. Application 3 listed the principal borrower as W.S., with an address of 29107 120th Way SE, Auburn, WA 98092. Application 3 identified W.S. as the Owner of W Schoonover Farm, and provided a date of birth, tax ID number for W.S. and the number of current employees as three.

Application 3 did not identify any connection to either S.R. or M.R.

18. On September 7, 2021, I reviewed SBA application number 23109116 ("Application 4"), provided by the SBA Office of the Inspector General. Application 4 was for a loan in the name of borrower Steele Creek Energy, 11 Charmaine Way, Spring Tx, 77382, for the amount of $142,900.00. Application 4 listed the principal borrower as S.W.N., with an address of 11 Charmaine Way, Spring Tx, 77382. Application 4 identified S.W.N as the Owner of Steele Creek Energy, and date of birth, tax ID number for S.W.N and the number of current employees as twelve. Application 4 did not identify any connection to either S.R. or M.R.

<u>Interview of S.R.</u>

19. Investigating agents interviewed S.R., who stated the following, in substance:

    a.    S.R. resides in Sunland, California;

    b.    S.R. has been a joint account holder of the SUBJECT ACCOUNT with M.R. for approximately four to five years;

    c.    S.R. has power of attorney over M.R.'s financial, insurance, and vehicle related accounts because M.R. has been residing in fulltime in China since 2017;

    d.    S.R. stated that M.R. still has access to the SUBJECT ACCOUNT and uses it for personal reasons;

   e. S.R. owns a business and started that business in or about November 2020. Before starting the business, S.R. collected unemployment funds from the state of California from approximately February 2020 to September 2020;

   f. S.R. did not apply for any SBA loans for their company, and did not know of any company or entity by the names of "Robfin Farms," "Stepkings Farms," "W. Schoonover Farm" or "Steele Creek Energy";

   g. S.R. was not currently collecting unemployment benefits, and has never collected unemployment benefits from, nor lived in, the states of Washington, Massachusetts or Arizona;

   h. S.R. did not know anyone by the names of Patricia George, Daniel W. Rightmyer, James W. Hill, Ronnie Shahnewaz, Sandra Brake or Bertha R. Fortenberry;

   i. S.R. stated that on or about July 20, 2020, they unsuccessfully attempted to send two wire transfers from SUBJECT ACCOUNT, based on a request from M.R., and that M.R. had provided the beneficiary information for the unsuccessful wires. These transfers included:

     i. One wire transfer of approximately $8,000.00 to "Chucks Obi" at Skandinaviska Enskilda Banken bank;

     ii. One wire transfer of approximately $45,279.00 to a "Intelaris Solutions" at Bank of America;

    j. S.R. did not recognize the beneficiary accounts or companies to which M.R. requested wire transfers;

    k. S.R. had been told by M.R. that he/she was working with a contact in China who aided estates and their deceased owners. Regarding the two wires, M.R. stated that an individual had passed away and their funds were being sent to M.R. to assist with his non-profit organization. A reported $15 million was supposed to be sent to SUBJECT ACCOUNT, but S.R. only noticed deposits of unemployment funds and SBA deposits.

    l. S.R. never had contact with the above-described contacts that M.R. referenced.

20. Based on my training and experience and my own investigation in this matter, I believe that M.R. is being defrauded and/or manipulated into acting as a "money mule,"[1] and that M.R. attempted to enlist S.R.'s aid in transferring criminal proceeds. In particular, I believe that M.R. has been defrauded by persons unknown into allowing the SUBJECT ACOUNT to

---

[1] Social engineering is a method used to manipulate victims into performing certain actions or providing confidential information. When successfully executed, social engineering techniques can cause a victim to send money to someone whom he or she met on a dating website or to provide confidential information such as his or her personal identifiable information and bank account information. Additionally, victims sometimes serve as "money mules," which are individuals recruited to receive and transfer money acquired from criminal activities on behalf of criminals and money launderers, often based on fraudulent promises or romantic relationships.

be used to receive criminal proceeds, and that M.R. has then attempted to execute transfers of those same criminal proceeds through instructions to S.R. regarding funds transfers, as described above.

### Attempted Interview of M.R.

21. The USSS has been unsuccessful in numerous attempts to speak with M.R. regarding the SUBJECT ACCOUNT.

## VI. TRACING OF THE SUBJECT FUNDS

### Unemployment Benefit Deposits into the SUBJECT ACCOUNT

22. Based on my review of bank records, the following unemployment benefit ACH deposits were made into SUBJECT ACCOUNT:

    a.   On or about May 11, 2020, one (1) ACH deposit in the amount of $5,212.00 from WA ST EMPLOY SEC, UI BENEFIT, was made in the name of Patricia George. S.R. has denied any knowledge of this individual.

    b.   On or about May 13, 2020, one (1) ACH deposit in the amount of $916.00 from WA ST EMPLOY SEC, UI BENEFIT, was made in the name of Patricia George. S.R. has denied any knowledge of this individual.

    c.   On or about May 13, 2020, thirty (30) ACH deposits in the amount of $18,810.00 from MA DUA, CARES ACT, MA PUA PROGRAM, were made in the names of Daniel W. Rightmyer (10

deposits), James W. Hill (10 deposits) and Sandra Brake (10 deposits). S.R. has denied any knowledge of these individuals.

        d. On or about June 11, 2020, one (1) ACH deposit in the amount of $6,453.00 from STATE OF ARIZONA, BENEFITPAY, was made in the name of Bertha R. Fortenberry. S.R. has denied any knowledge of this individual.

        e. On or about May 26, 2020, one (1) ACH deposit in the amount of $10,179.00 from WA ST EMPLOY SEC, UI BENEFIT, was made in the name of M.R. As described above, M.R. currently resides in China and has for multiple years.

### SBA Deposits into the SUBJECT ACCOUNT

23. Based on my review of bank records, the following SBA loan deposits were made into SUBJECT ACCOUNT.

        a. On July 14, 2020, one ACH deposit in the amount of $60,400.00 from SBAD TREAS 310 MISC PAY, was made in the name of ROBFIN FARMS. S.R. has denied any knowledge of this entity.

        b. On July 14, 2020, one ACH deposit in the amount of $44,600.00 from SBAD TREAS 310 MISC PAY, was made in the name of STEPKINGS FARMS. S.R. has denied any knowledge of this entity.

        c. On July 14, 2020, one ACH deposit in the amount of $10,000.00 from SBAD TREAS 310 MISC PAY, was made in the name of W. SCHOONOVER FARM. S.R. has denied any knowledge of this entity.

    d. On July 14, 2020, one ACH deposit in the amount of $5,000.00 from SBAD TREAS 310 MISC PAY, was made in the name of ROBFIN FARMS. S.R. has denied any knowledge of this entity.

    e. On August 10, 2020, one ACH deposit in the amount of $142,800.00 from SBAD TREAS 310 MISC PAY, was made in the name of STEELE CREEK ENERGY. S.R. has denied any knowledge of this entity.

 24. A total of $304,370.00 in suspicious deposits were made into the SUBJECT ACCOUNT. Of those funds, a total of $272,805.00 (*i.e.*, the SUBJECT FUNDS) remains held by PFCU in the SUBJECT ACCOUNT.

## IV. CONCLUSION

 25. Based on the facts set forth above, there is probable cause to believe that the SUBJECT FUNDS are subject to seizure pursuant to 18 U.S.C. § 981(b)(2) and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) (rendering subject to forfeiture any property that constitutes or is derived from proceeds traceable to any violation of 18 U.S.C. §§ 1956 (money laundering) and 1343 (wire fraud)). In addition, there is probable cause to believe that the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. §

853(e) would not be sufficient to assure the availability of the property for forfeiture. To the extent that the SUBJECT FUNDS are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that the funds are identical property found in the same accounts as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to Title 18, United States Code, Section 984 (Forfeiture of Fungible Property).

                                               _____Daniel Hochman_____
                                               Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

                                               Daniel Hochman
                                               Special Agent
                                               United States Secret Service

Subscribed and sworn to on this ____ day of October, 2021

_____
HONORABLE MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE